IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
**DENNIS TAYLOR**, )
 )
         Petitioner, )
 )
     v. )  Case No. 15 C 4969
 )
**TARRY WILLIAMS**, Custodian, Warden, )
 )
         Respondent. )

## MEMORANDUM OPINION AND ORDER

Dennis Taylor ("Taylor"), who is serving multiple state court sentences based on a jury's determination of his guilt beyond a reasonable doubt on a host of charges -- two counts of first degree felony murder, two counts of aggravated kidnapping and one count each of attempted arm robbery and aggravated unlawful restraint -- has now turned to this federal court to seek habeas relief under 28 U.S.C. § 2254 ("Section 2254"). Although Taylor asserts no fewer than 21 grounds for relief, all but a few of them can and should be dispatched on grounds that make it unnecessary to consider the substantive merit or lack of merit of those grounds. This memorandum opinion and order will accordingly first consider those grounds that can be dealt with in short compass and will then analyze the few remaining grounds.

Before that is done, however, the background of the case and the nature of Taylor's asserted grounds for relief can best be set out by attaching to this opinion the first ten pages of the Answer filed by respondent to Taylor's Petition for a Writ of Habeas Corpus ("Petition"). That Answer is based primarily on the Illinois Appellate Court's March 3, 2014 order that affirmed the dismissal of Taylor's pro se post-conviction petition for relief of judgment

(2014 IL App (1st) 123027-U, 2014 WL 860537) and, in a few respects, on that Appellate Court's disposition of Taylor's direct appeal (an unpublished order in People v. Taylor, No. 1-08-0454 (July 13, 2010)).

Now to Taylor's 21 current claims as summarized at pages 8 through 10 of the attachment. To begin with, Grounds 4 and 19 assert claimed violations of state law, not federal constitutional law. As such they are not cognizable under Section 2254 (as to Ground 4 see Estelle v. McGuire, 502 U.S. 62, 68 (1991), and as to Ground 19 see United States v. Gwiazdzinski, 141 F.3d 784, 787 (7th Cir. 1998) ). And as for the Ground 21 assertion of Taylor's innocence, that is not a freestanding claim that may be raised in habeas proceedings (Herrera v. Collins, 506 U.S. 390, 404 (1993)).

Next, Grounds 3, 5 and 13 are contradicted by the record, as conclusively demonstrated by respondent's Answer at 12 and the portion of the Answer's Exhibits that are cited there. So far, then, 6 purported grounds are down and there are 15 to go.

Most of those remaining grounds are quickly disposed of because of the fundamental principle announced in the seminal opinion in O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999):

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

On that score pages 5 through 8 of the attachment from respondent's Answer and paragraphs 13 and 17 of the Illinois Appellate Court's 2014 opinion affirming the denial of Taylor's pro se post-conviction effort describe the claims that were raised in the state trial court and those raised on direct appeal and post-conviction appeal. And here is what a review of those claims in O'Sullivan v. Boerckel terms reveals:

1. Grounds 6 through 11 and 15 through 18, although raised in Taylor's post-conviction petition, were not presented for decision on appeal to the Illinois Appellate Court.

2. Grounds 14 and 20 were never raised before the state courts at all.

That, then, has knocked out a dozen of the 15 remaining grounds,[1] leaving only 3 potential claims -- Grounds 1, 2 and 12 -- that need to be examined on the merits. As to those grounds, Section 2254(d) mandates the denial of federal habeas relief unless a petitioner shows that the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

And to that end such cases as Miller v. Smith, 765 F.3d 754, 760 (7th Cir. 2014) (citations to Williams v. Taylor, 529 U.S. 362 (2000) omitted) teach:

> A state court decision is contrary to federal law if the state court applied a rule that is opposite from the law established by the United States Supreme Court or the state court decided the case differently than the United States Supreme Court did in another case with materially indistinguishable facts. A state court's application of federal law is deemed unreasonable if it correctly states the controlling legal principle as established by a United States Supreme Court decision but unreasonably applies that principle to the facts of the case.

---

[1] Although Taylor contends that he attempted to raise four claims in a pro se brief in the Appellate Court on post-conviction appeal, thus assertedly preserving those claims for federal habeas review, the Appellate Court rejected his request to file that pro se brief because he was represented by counsel. That defeats Taylor's contention because it sets out an independent and adequate state law ground that prohibits federal habeas review of those claims (see, e.g., Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

Those principles provide the yardstick against which remaining Grounds 1, 2 and 12 must be measured.

As for Ground 1, a claim that trial counsel was ineffective for having failed to tender additional or alternative instructions to the effect that Taylor was no longer attempting to escape if he had reached a place of temporary safety, the Illinois Appellate Court on direct appeal properly relied on the two-part test in Strickland v. Washington, 466 U.S. 668 (1984) for measuring trial counsel's performance. Indeed, not only was the decision of the Appellate Court not "contrary to" federal law, but the jury instructions that were actually given in the area about which Taylor now complains were upheld by that court as entirely proper under state law. In sum, because the Appellate Court's rejection of Ground 1 was neither contrary to nor an unreasonable application of Strickland, Taylor is dead in the water on that contention.

This opinion accordingly turns to Ground 2 and its assertion that the evidence was insufficient to convict Taylor of felony murder. As for that contention, it was reasonably rejected by the Illinois Appellate Court under the sufficiency-of-the-evidence test established more than 35 years ago in Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citation omitted, emphasis in original):

> Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution.

Here (1) the Illinois Appellate Court cited Jackson and correctly articulated its standard, negating any contention that the decision was "contrary to" federal law, and (2) Illinois substantive law as

to felony murder confirms that the application of Jackson to Taylor's case was entirely reasonable. That then disposes of Ground 2, leaving only Ground 12 to be considered.

That Ground seeks to assert the constitutional ineffectiveness of trial counsel in allegedly having compelled Taylor to testify and in conceding his guilt to the underlying felonies. Here too the Illinois Appellate Court properly cited and applied the analysis called for by Strickland. And as for reasonableness, the Appellate Court reasonably determined that, given the overwhelming evidence of Taylor's guilt on the underlying felonies, trial counsel's handling of the case reflected a sense that counsel and Taylor "would have lost credibility" in arguing noncommission of those felonies. That entirely reasonable view in turn rendered equally reasonable counsel's strategy in pursuing instead the theory of "temporary safety" as the predicate for seeking to insulate Taylor against the felony murder charge. In short, Ground 12 cannot serve as a basis for relief under Section 2254(d) either.

## Conclusion

Although the sheer number of contentions sought to be advanced by Taylor might create the impression that with so much smoke there must be at least some constitutional fire, any such notion has been dispelled by taking a searching look at those claims, as respondent's Answer has done and this Court's careful review has confirmed. That being the case, there is no need to bring Rule 5(e) of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules") into play by calling for a reply by Taylor.

Accordingly Taylor's Petition for a Writ of Habeas Corpus is denied. And finally, there is also no need to ask the parties "to submit arguments on whether a certificate [of appealability] should issue" (Section 2254 Rule 11(a)) -- instead this Court denies a certificate of appealability

and advises Taylor that he "may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22" (id.).

                                                                       _____
                                                                       Milton I. Shadur
                                                                       Senior United States District Judge

Date: October 8, 2015

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS TAYLOR, R68729, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 15 C 4969 |
| | ) | |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center, | ) | The Honorable |
| | ) | Milton I. Shadur, |
| Respondent. | ) | Judge Presiding. |

**ANSWER TO PETITION FOR A WRIT OF HABEAS CORPUS**

Under Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's August 4, 2015 order, Doc. 21, respondent Tarry Williams[1] answers petitioner's 28 U.S.C. § 2254 habeas corpus petition, Doc. 1.

**Background**

In 2005, while attempting to evade police minutes after committing a number of felonies including attempted armed robbery and aggravated kidnapping, petitioner and his accomplice, Anthony Brown, ran a red light at an intersection and crashed into another car, killing both of its occupants. Exh. J, *People v. Taylor*,

---

[1] There currently is no warden or acting warden at Stateville Correctional Center. According to the Illinois Department of Corrections, Nicholas Lamb, Assistant Warden of Operations, is currently in charge of day-to-day operations. Mr. Lamb is therefore "the state officer who has custody" of petitioner and should be substituted for Tarry Williams as the named respondent in this case. *See* Habeas Rule 2; Fed. R. Civ. P. 25(d).

2014 IL App (1st) 123027-U, ¶¶ 4, 7.[2]  Petitioner was arrested at the scene of the crash.  *Id.*

### A. Trial and Sentencing

Petitioner was tried before a Cook County, Illinois jury in 2007, at which time the following facts were elicited through witnesses' testimony:

On September 6, 2005, petitioner and Brown entered a Jewel grocery store in Dolton, Illinois, prior to the store's opening.  Exh. J at ¶ 4.  Both men were armed with guns.  *Id.*  Petitioner and Brown bound the hands of two female employees, then locked them in a freezer.  *Id.*  A third female employee resisted, and Brown struck her in the eye and on the back of her head with his gun.  *Id.*  At the same time, petitioner led a male employee at gunpoint to the bakery area.  *Id.*

Petitioner then went to the front of the store, where two other female employees were working.  *Id.* at ¶ 5.  Upon seeing petitioner run toward them with a gun in his hand, one of those employees ran to the service office, shut the door, called 911, and watched on a store monitor while petitioner chased the other employee.  *Id.*  That employee eventually made it to the service office as well, and they remained there until the police arrived.  *Id.*

Meanwhile, the male employee petitioner had led by gunpoint to the bakery area escaped to his truck, drove to an adjacent parking lot, and called 911.  *Id.* at

---

[2] The facts underlying petitioner's conviction as determined by the state courts are presumed correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  Respondent has filed all exhibits cited herein under separate cover.

2

¶ 6. As he spoke to the 911 dispatcher, he noticed petitioner riding in a pickup truck driving twenty to thirty feet in front of him and relayed that information to the dispatcher, along with a description of the truck and the direction it was traveling. *Id.* During the call, he heard police sirens approaching the store. *Id.*

About 1.4 miles from the store, Detective Staples began following directly behind the pickup truck traveling east. Exh. A, *People v. Taylor*, No. 1-08-0454, at 13 (Ill. App. Ct. 2010). Within several blocks, a second marked police vehicle began following behind Detective Staples. *Id.* Shortly after that, the truck suddenly accelerated, veered around two cars that were stopped at the traffic signal, and sped into the intersection against the red light. *Id.* at 13-14. The truck struck an SUV that was traveling north through the intersection, killing its two occupants instantly. Exh. J at ¶ 7.

After the crash, police found petitioner lying on the ground near the truck next to a loaded nine millimeter semi-automatic handgun. *Id.* Detective Giroux testified that the distance from the store to the crash site is 2.4 miles and that approximately four-and-a-half minutes elapsed between the initial report of the armed robbery and Detective Staples's message reporting the deadly crash. *Id.*

Petitioner testified on his own behalf. *Id.* at ¶ 8. He admitted that he intended to commit armed robbery when he went to the grocery store with Brown. *Id.* He admitted binding the hands of two employees and putting them in a freezer, and bringing the male employee to the bakery area. *Id.* According to petitioner,

3

when he brought that employee to the bakery area, he saw that an employee who had resisted being bound was lying on the ground bleeding. *Id*. He claimed that he then walked to the front of the store with his gun visible to alert the other employees so they could get away. *Id*. One of the employees ran to the office; petitioner knew there was a telephone there and that she would call the police. *Id*. He then returned to the back of the store and told Brown they had to leave. *Id*.

Petitioner testified that he was a passenger in the pickup truck driven by Brown. *Id*. at ¶ 9. Petitioner claimed that, after they left the grocery store, Brown stopped briefly at a nearby gas station and retrieved a duffle bag from the rear of the truck. *Id*. Petitioner claimed that he felt safe at that time. *Id*. A minute or two later, petitioner and Brown began driving east on Sibley Boulevard toward the expressway, hoping to get away before being apprehended by police. *Id*. Petitioner reclined in his seat and was "on edge." *Id*. at ¶ 10. As they approached the intersection with Woodlawn Avenue, Brown told petitioner that the police were behind them. *Id*. Brown then accelerated into the intersection and crashed into the SUV. *Id*.

In opening and closing arguments, defense counsel argued that, though petitioner participated in the armed robbery, he was not guilty of felony murder because the crash did not occur duing an attempt to escape, given that petitioner had reached a place of "temporary safety." *Id*. at ¶ 11.

4

Petitioner objected to the State's proposed jury instructions regarding felony murder but did not offer alternatives, and the court gave Non-Pattern Illinois Jury Instructions ("non-IPI instructions") specifying, among other things, that under felony murder "the defendant may be liable for either an intentional or accidental killing or for a killing committed by an accomplice or a third party" and "[a]n attempted escape immediately after the commission of a crime is part of the crime itself. It is for you to determine from the evidence in this case whether the defendant was attempting to escape." Exh. A at 17-21.

The jury found petitioner guilty of two counts of first degree felony murder, two counts of aggravated kidnapping, and one count each of attempted armed robbery and aggravated unlawful restraint. Exh. J at ¶ 12. The trial court sentenced petitioner to two life sentences, one for each felony murder conviction, as well as twenty-five years of imprisonment for each of the aggravated kidnapping convictions, fifteen years for attempted armed robbery, and five years for aggravated unlawful restraint. *Id.*

B. **Direct Appeal**

On direct appeal, petitioner asserted that (1) the State failed to prove him guilty of felony murder; (2) the trial court erred in instructing the jury regarding felony murder by providing the non-IPI instructions described above; (3) trial counsel was ineffective for failing to tender alternative instructions; (4) the trial court erred in denying his request for an evidentiary hearing to determine whether

a particular juror was biased; and (5) the mittimus was incorrect because, among other reasons, he could not be sentenced for attempted robbery because it was the predicate offense for the two felony murder convictions. Exh. A at 1-2 (appellate court opinion); Exh. B, Petitioner's Direct Appeal Brief, *People v. Taylor*, No. 1-08-0454 (Ill. App. Ct.).

The appellate court denied the first three claims. The court found that petitioner had forfeited his jury instruction claim by failing to submit alternative instructions; the court further held the claim was meritless because the trial court's jury instructions accurately summarized state law — i.e., that an attempt to escape immediately after the commission of a crime is part of the crime itself for purposes of felony murder. Exh. A at 17-22. The court rejected petitioner's sufficiency of the evidence claim because, among other reasons, the deadly crash occurred soon after petitioner admittedly committed the crimes at the store only 2.4 miles away, while petitioner was seeking to avoid capture, and petitioner's own actions set in motion the events that led to the deaths. *Id*. at 11-17. The court denied petitioner's ineffective assistance claim because the failure to object to the instructions was not deficient (given that the instructions accurately summarized the law) and there was no prejudice (because, given the overwhelming evidence, petitioner failed to show that the result of his trial would have been different if alternative instructions had been tendered and accepted). *Id*. at 22-23. However, the court remanded the case

to the trial court to conduct an evidentiary hearing regarding the juror bias claim and correct the mittimus by vacating the attempted robbery sentence. *Id*. at 26.

Petitioner then filed a petition for leave to appeal (PLA) two of his claims: (i) the State failed to prove him guilty of felony murder beyond a reasonable doubt; and (ii) trial counsel was ineffective for failing to tender alternative jury instructions. Exh. E, PLA, *People v. Taylor*, No. 110818 (Ill.). The Illinois Supreme Court denied the PLA on November 24, 2010. Exh. F, *People v. Taylor*, 942 N.E.2d 460 (Ill. 2010).

On June 15, 2011, after conducting an evidentiary hearing, the trial court denied petitioner's juror bias claim. Doc. 11 at ¶ 3. The appellate court then ordered petitioner to file a report stating whether he intended to challenge the trial court's ruling on that issue but petitioner failed to comply and the court held that he had forfeited any challenge. Exh. J at ¶ 14. Petitioner subsequently filed another PLA, alleging that his counsel was ineffective for failing to comply with the deadlines imposed by the appellate court to appeal the trial court's denial of his juror bias claim. Exh. H, PLA, *People v. Taylor*, No. 113827 (Ill.). The Illinois Supreme Court denied the PLA on March 28, 2012. Exh. I, *People v. Taylor*, 968 N.E.2d 87 (Ill. 2012).

C.   **Postconviction Petition**

On May 31, 2012, petitioner mailed a postconviction petition to the Cook County circuit court. Exh. J at ¶ 15. The trial court dismissed the petition on August 31, 2012, finding petitioner's claims frivolous. *Id*. at ¶ 16.

7

On appeal, petitioner argued that trial counsel was ineffective for (1) using a strategy that conceded petitioner's guilt of the underlying felonies; (2) "compel[ing] him to testify and admit to his guilt to the robbery offense"; and (3) failing to inform him that even if he were acquitted of the felony murder charges, he was subject to a life sentence as a habitual criminal. *Id*. at ¶ 17; Exh. K, Petitioner's Postconviction Appeal Brief, *People v. Taylor*, No. 1-12-3027 (Ill. App. Ct.). The appellate court held that the trial court properly dismissed petitioner's claims because he failed to demonstrate that counsel's performance was deficient and he was not prejudiced because there was overwhelming evidence of his guilt. Exh. J at ¶¶ 17-22.

Petitioner thereafter filed a pro se PLA, alleging the same three claims raised in the appellate court, and also arguing that the appellate court should have allowed him to file a pro se brief raising additional claims despite the fact that he was represented by counsel. Exh. N, Postconviction PLA, *People v. Taylor*, No. 117553 (Ill.). The Illinois Supreme Court denied petitioner's postconviction PLA on May 28, 2014. Exh. O, *People v. Taylor*, 8 N.E.3d 1052 (Ill. 2014).

### D. Federal Habeas Corpus Petition

This Court received petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus on June 4, 2015. Doc. 1. The petition raises twenty-one grounds for relief:

(1) Trial counsel was ineffective for failing to tender an instruction explaining that he was not guilty of felony murder if he was no longer attempting to escape and had reached a place of temporary safety;

(2) The State failed to prove him guilty of felony murder;

8

(3)    Appellate counsel on direct appeal was ineffective for failing to challenge the sufficiency of evidence of felony murder;

(4)    The trial court erred by providing the jury with non-IPI instructions for felony murder;

(5)    Appellate counsel on direct appeal was ineffective for failing to argue that the trial court erred by providing the jury with non-IPI instructions for felony murder;

(6)    Trial counsel was ineffective for failing to investigate and subpoena a gas station videotape and gas station employees;

(7)    "Post-trial counsel" was ineffective for not raising in the post-trial motion trial counsel's failure to investigate and subpoena a gas station videotape and gas station employees;

(8)    Appellate counsel on direct appeal was ineffective for not raising post-trial counsel's failure to raise trial counsel's failure to investigate in a post-trial motion;

(9)    Petitioner was denied his right to confront his accusers and received ineffective assistance of counsel because trial counsel failed to call Officer Thomas Wetherald to testify;

(10)   Post-trial counsel was ineffective for not arguing in a post-trial motion that petitioner was denied his right to confront his accusers and received ineffective assistance of counsel because trial counsel failed to call Officer Wetherald to testify;

(11)   Appellate counsel on direct appeal was ineffective for not arguing that petitioner was denied his right to confront his accusers and received ineffective assistance of counsel because trial counsel failed to call Officer Wetherald to testify;

(12)   Trial counsel was ineffective because he "compelled [petitioner] to testify and concede guilt to the underlying crimes";

(13)   Post-trial counsel was ineffective for failing to argue in a post-trial motion that trial counsel was ineffective for "compel[ing] [petitioner] to testify and concede guilt to felony murder";

9

(14) Appellate counsel on direct appeal was ineffective for failing to argue that trial counsel was ineffective for "compel[ing] [petitioner] to testify and concede guilt";

(15) The prosecutor misstated the law and facts regarding petitioner's attempted escape;

(16) Trial counsel was ineffective for failing to object to the prosecutor misstating the law and facts regarding petitioner's attempted escape;

(17) Post-trial counsel was ineffective for failing to argue in a post-trial motion that the prosecutor misstated the law and facts regarding petitioner's attempted escape;

(18) Appellate counsel on direct appeal was ineffective for failing to argue that trial and post-trial counsel were ineffective for failing to argue that the prosecutor misstated the law and facts regarding petitioner's attempted escape;

(19) The state court improperly denied him leave on postconviction appeal to file pro se briefs while represented by counsel;

(20) Cumulative error; and

(21) Petitioner is actually innocent.

*Id.* at 6-29.

Petitioner has exhausted his state court remedies for these claims because no further state court avenues remain open by which he may raise them. *See* 28 U.S.C. § 2254(c).